UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| GINA NELSON, | ) | 3:12-CV-0165-LRH (VPC) |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| NAV-RENO-GS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This discovery dispute concerns the effect of the *Faragher/Ellerth* affirmative defense on an employer's discovery obligations to turn over documents to plaintiff about the employer's investigation into a sexual harassment claim. The plaintiff is Gina Nelson ("plaintiff") and she has sued defendants, NAV-RENO-GS, LLC ("Grand Sierra") and Roger Reed for sexual harassment. The court held a case management conference on April 9, 2013, and ordered that the parties file blind briefs on April 19, 2013, and responses on May 2, 2013 (#41). The court stayed expert discovery, but confirmed that the April 30, 2013 deadline still stood for fact discovery. *Id.* Plaintiff filed a motion to compel and for attorney's fees (#s 44 & 46), defendants filed an opening brief regarding discovery dispute (#43), and each party responded (#s 47 & 48). Thereafter, the court ordered defendant Grand Sierra to submit the disputed notes for an *in camera* review (#49), which it did. The handwritten notes, twenty-nine pages in length, were prepared by Sterling Lundgren ("Mr. Lungren"), Grand Sierra's vice-president of human resources, and Deborah Kite, Grand Sierra's human resources representative ("Ms. Kite").

**I.   Procedural History**

Plaintiff worked as a security guard at the Grand Sierra and contends her supervisor, Mr. Reed, sexually harassed her. In March 2011, another employee notified Mr. Lundgren, of plaintiff's allegations (#43, Lundgren Decl., Ex. 1). Soon thereafter, Mr. Lundgren called his attorney and obtained legal advice about how to respond to plaintiff's allegations. *Id.* Based on plaintiff's allegations, both Mr.

1  Lundgren and his attorney anticipated that litigation would ensue (#43-1, Lundgren Dec. Ex. 1; Hall
2  Dec., Ex. 2). Upon advice of counsel, Mr. Lundgren launched an internal investigation about plaintiff's
3  allegations, and Grand Sierra interviewed several employees, including plaintiff, Mr. Reed, and others
4  (#43-1, Lundgren Dec.). Defendants' counsel instructed Mr. Lundgren to take notes of the interviews
5  so that counsel could analyze the situation, provide advice about how to proceed, and also in anticipation
6  of litigation (#43-1, Lundgren Decl.; Hall Decl.). Mr. Lundgren and Ms. Kite conducted these
7  interviews of the plaintiff, Mr. Reed, and other Grand Sierra employees (#43-1, Lundgren Decl.). Mr.
8  Lundgren attests that "[he] took notes at [Mr.] Hall's direction and for the primary purpose of being able
9  to give them to Mr. Hall so that he could provide legal advice in anticipation of litigation." *Id.*

10  Mr. Reed denied the allegations, other employees interviewed could not corroborate plaintiff's
11  allegations, and the Grand Sierra could not confirm what plaintiff had reported. (#43). However,
12  plaintiff was transferred from the swing shift to the day shift to reduce plaintiff's contact with Mr. Reed.
13  *Id.* Plaintiff made no further complaints against Mr. Reed, and it was not until plaintiff filed a Charge
14  of Discrimination with the Nevada Equal Right Commission that the Grand Sierra learned of additional
15  alleged incidents. *Id.* Plaintiff later filed this complaint, which is the subject of this lawsuit, and
16  defendants asserted the *Faragher/Ellerth* affirmative defense in their answer (#6).[1]

17  During discovery plaintiff sought production of the notes that Mr. Lundgren and Ms. Kite took
18  during Grand Sierra's investigation, but Grand Sierra withheld the notes based upon the attorney-client
19  privilege and the work product doctrine (#44-1, Ex. 4). Defendants did produce a position statement
20  prepared by its counsel and sent to the Nevada Equal Right Commission several months after the
21  investigation was completed (#44-1, Ex. 5) Plaintiff's position is that by asserting the *Faragher/Ellerth*
22  affirmative defense, the defendants waived any claim of attorney-client privilege or the work product

---

26  [1] The *"Faragher/Ellerth* affirmative defense" refers to two Supreme Court decisions: *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775
27  (1998). The Court held that an employer will not be held liable for sexual harassment under Title VII if it can demonstrate that (1) it took reasonable steps to prevent and correct harassment, and (2) the
28  plaintiff unreasonably failed to take advantage of the employer's preventative or corrective measures.

2

doctrine.[2] Grand Sierra's view is that it withheld the notes because they were taken for the purpose of securing legal advice and were written at the direction of counsel in anticipation of litigation; therefore, they are protected from disclosure.

## II. Analysis and Discussion

In the wake of *Faragher* and *Ellerth,* employers sued in a Title VII action routinely conduct investigations of claims of sexual harassment and fashion appropriate remedies to address the complaint and to limit their liability. "However, where the affirmative defense is asserted, attorney-client and work product privileges may be waived if they are being used to shield information regarding an investigation or remedial efforts that the Defense has put at issue through the assertion of this defense." *Jones v. Rabonco, Ltd.,* 2006 WL 2401270, at *4 (W.D. Wash. 2006) (citing *U.S. v. Ortland,* 109 F.3d 539, 543 (9th Cir. 1997)). An employer like Grand Sierra typically asserts that it promptly investigates claims and provides remedies to avoid or limit its liability. However, in doing so, it may lose the protections of the work product doctrine and the attorney-client privilege. The party asserting the attorney-client privilege or the work product doctrine has the burden of establishing that either or both clearly apply to the specific information or documents. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citation omitted); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D.Cal. 2008). Therefore, it is Grand Sierra's burden to establish that the attorney-client privilege and/or the work product doctrine applies to the notes that Mr. Lundgren and Ms. Kite prepared during their investigation of plaintiff's complaint.

The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial . . . [unless] they are otherwise discoverable under Rule 26(b)(1); and the party shows that it has substantial need for the material to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A). Rule

---

[2] In her motion to compel, plaintiff claims for the first time that defendant waived all objections to the contested discovery because it failed to provide timely objections (#44). The court will not consider this argument, as plaintiff failed to raise it earlier, and the parties told the court at the April 9, 2013 hearing that this dispute solely concerns the effect of the *Faragher/Ellerth* affirmative defense on documents allegedly protected by the attorney-client privilege and/or the work product doctrine. The court will also not consider defendants' contention that plaintiff failed in her meet-and-confer obligations, as defendants did not raise this issue at the April 9, 2013 hearing.

26(b)(3) provides for protection of both "opinion" work product and "fact" work product. *Kintera*, 219 F.R.D. at 507. Opinion work product consists of the "mental impressions, conclusions, or legal theories of an attorney or other representative of a party," including such items as an attorney's legal strategy, evaluation of the strengths and weaknesses of the case, and inferences drawn from witness interviews. *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 559 (C.D.Cal. 2003) (citation omitted); *Kintera*, 219 F.R.D. at 507. Absent a waiver, opinion work product receives "nearly absolute protection" and is discoverable only in "rare and extraordinary circumstances." *Bagley,* 212 F.R.D. at 559. Fact work product consists of factual material that is prepared in anticipation of litigation. *Id.* Fact work product is discoverable upon a showing of "substantial need" and "undue burden." *Id.*; Fed. R.Civ.P. 26(b)(3)(A)(ii).

In contrast, the attorney-client privilege is more narrow and distinct than the work product doctrine. *See United States v. Nobles,* 422 U.S. 225, 238 n. 11 (1975). While it protects communications made in confidence between the client and attorney from discovery, it does not protect the underlying facts within those communications. *Upjohn Co. v. United States,* 449 U.S. 383, 395-96 (1981).

The Ninth Circuit outlines the elements of the attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by himself [or herself] or by the legal adviser, (8) unless the protection be waived.

*Admiral Ins. Co. v. U.S. District Court,* 881 F.2d 1486, 1492 (9th Cir. 1989). Blanket assertions of the attorney-client privilege are disfavored, since the privilege inhibits full and free discovery, it is strictly construed. *Lightguard Systems, Innc., v. Spot Devices, Inc.,* 281 F.R.D. 593, 598 (D.Nev. 2012). As with the work product doctrine, the party asserting the attorney-client privilege has the burden to establish that it applies. *Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir. 1992) (citations omitted).

**A.     The Work Product Doctrine**

It is undisputed that the Grand Sierra – faced with a claim of sexual harassment – did what employers now routinely do in such cases: it opened an investigation. Employers do this for two reasons.

First, the law prohibits sexual harassment in the workplace, and employers recognize their obligation to address these claims. Second, by investigating these claims, employers can shield themselves from liability under the *Faragher/Ellerth* affirmative defense.

As earlier noted, the court has reviewed *in camera* the notes that Mr. Lundgren and Ms. Kite prepared during employee interviews. The court acknowledges that the declarations of Messrs. Hall and Lundgren attest that Mr. Lundgren undertook the investigation at Mr. Hall's direction and in anticipation of litigation. Nevertheless, the court finds that the Grand Sierra has not met its burden to establish that the work product doctrine shields the interview notes from disclosure. The notes do not contain Mr. Hall's legal strategies, mental impressions, conclusions, opinions, or legal theories; rather, they are simply handwritten notes taken contemporaneously during employee interviews about plaintiff's sexual harassment claim. Second, based upon these particular facts, the court agrees with the line of cases that hold that when an employer asserts the *Faragher/Ellerth* affirmative defense, it may waive the protections of the work product doctrine concerning documents related to that investigation. *See E.E.O.C. v. Outback Steakhouse of Florida,* 251 F.R.D. 603, 610 (D.Colo. 2008); *Walker v. Contra Costa County,* 227 F.R.D. 529, 533 (N.D.Cal. 2005).

### B. The Attorney-Client Privilege

As noted, the attorney-client privilege is construed more narrowly that the work product doctrine. *See Nobles,* 422 U.S. at 238, n. 11. While it protects communications made in confidence between the client and the attorney from discovery, it does not protect underlying facts contained within those communications. *Upjohn,* 449 U.S. at 395-96. The court has examined the "nature, content, and context in which the document[s] [were] prepared." *Lightguard Systems, Inc. v. Spot Devices, Inc.,* 281 F.R.D 593, 598 (D.Nev. 2012). The notes were prepared by non-attorneys, they do not contain any legal advice from Mr. Hall to Mr. Lundgren, nor are they communications between an attorney and a client. They are recorded facts that Mr. Lundgren and Ms. Kite took during employee interviews and nothing more.

*Walker v. Contra Costa Co. supra,* is instructive. In that case, a human resources employee for the county prepared an investigative report in response to a race discrimination claim. As here, the defendant asserted the *Faragher/Ellerth* defense and argued that even though a non-attorney prepared the report, it was subject to the attorney-client privilege because it was prepared at the direction of

5

counsel. The court held that the report was not protected because it contained no attorney-client communications, and it was neither prepared by nor addressed to an attorney; rather, it was prepared by the human resources director for the Board of Supervisors. 227 F.R.D. 529, 536.

The court finds that the attorney-client privilege does not apply to the notes at issue in this case. The nature and content of the notes are straightforward: they report what employees stated in their interviews. Mr. Lundgren and Ms. Kite did not annotate their notes with any opinions, conclusions, or comments, or notations about discussions they may have had with Grand Sierra's counsel about the interviews. The fact that Grand Sierra's counsel conferred with Mr. Lundgren about the investigation of plaintiff's claim of sexual harassment and directed that human resources employees conduct interviews does not cloak these documents with the protection of the attorney-client privilege.

### III. Conclusion

The court finds that Grand Sierra has not met its burden to establish that Mr. Lundgren and Ms. Kite's notes are protected by either the work product doctrine or the attorney-client privilege. Therefore, defendant Grand Sierra is ordered to produce Mr. Lundgren and Ms. Kite's notes to plaintiff's counsel within three business days of this order.

The court ordered the parties to file simultaneous briefs concerning this dispute (#41). Rather than file a brief as the court ordered, plaintiff responded by filing a motion to compel and a motion for an award of attorney's fees (#s 44 & 46). In light of this order, both motions (#s 44 & 46) are **DENIED**.

If an objection to this order is filed pursuant to LR 3-1, this order shall be stayed until a final determination is issued by the District Court. If no objection is filed, defendants' counsel shall also contact the Courtroom Administrator, Lisa Mann, to arrange to pick up the documents delivered to the court for its *in camera* review.

**IT IS SO ORDERED.**

Date: June 7, 2013.

_____
UNITED STATES MAGISTRATE JUDGE